# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **MARLO M. REID,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 6:13-CV-320-VEH** |
| ) | |
| **CAROLYN W. COLVIN, ACTING** ) | |
| **COMMISSIONER, SOCIAL** ) | |
| **SECURITY ADMINISTRATION.** ) | |
| ) | |
| **Defendant.** | |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Marlo M. Reid brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. Reid timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

§ 405(g).[2] For the following reasons, the court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

### STATEMENT OF THE CASE

Ms. Reid was 40 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 155 *with* Tr. 9. She has completed the tenth grade. Tr. 35. Her past work experience includes employment as a gluer, material handler, and hair dresser. Tr. 54-55. She claims she became disabled on June 16, 2009, due to limitations imposed by her Hepatitis C infection, depression, bad eyesight and hearing, low immune system, dizziness, fatigue, joint and muscle pain, bad liver, and high blood pressure. Tr.185. Her last period of work ended on that date. *Id.*

On June 22, 2009, Ms. Reid protectively filed a Title II application for a period of disability and DIB. Tr. 9. She also protectively filed a Title XVI application for SSI on that date. *Id.* On October 5, 2009, the Commissioner initially denied these claims. Tr. 69.[3] Ms. Reid timely filed a written request for a hearing on October 27, 2009. Tr. 80. The ALJ conducted a hearing on the matter on March 18, 2011. Tr. 9. On May 13,

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]The ALJ below recorded the initial denial date as November 17, 2009. Tr. 9. It is uncontested, however, that Ms. Reid requested a hearing challenging this denial on October 27, 2009. Tr. 80. Given this fact, the court has credited October 5, 2009 – the earliest transmission date on record (tr. 69) – as the accurate date here.

2011, he issued his opinion concluding Ms. Reid was not disabled and denying her benefits. Tr. 24. She timely petitioned the Appeals Council to review the decision on May 20, 2011. Tr. 5. On December 19, 2012, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Reid filed a Complaint with this court on February 15, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on June 19, 2013. Doc. 7. Ms. Reid filed a supporting brief (doc. 9) on July 23, 2013, and the Commissioner responded with her own (doc. 10) on September 3, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Reid met the insured status requirements of the Social Security Act through March 31, 2010.

2. She had not engaged in substantial gainful activity since June 16, 2009, the alleged disability onset date.

3. She had the following severe impairments: degenerative disease of the right knee status post arthroscopic surgery; essential hypertension, diffuse pain with no objective neurological deficit; major depressive disorder, recurrent; post traumatic stress disorder; anxiety disorder, not otherwise specified; and borderline personality disorder.

4. She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. She had the residual functioning capacity ("RFC") to perform sedentary work with limitations. She could lift and carry ten pounds occasionally and frequently; sit for six hours out of an eight hour workday; stand and walk for four hours out of an eight hour workday; had no limitations on the use of her upper and lower extremities for pushing and pulling or operation of hand and foot controls; could occasionally climb ramps and stairs, balance, stoop, kneel and crouch; for safety reasons, she should not work on ladders, ropes, or scaffolds; she should avoid concentrated exposure to extreme cold; she should not work around dangerous machinery or unprotected heights; she could understand, remember, and carry out short, simple instructions but not detailed or complex instructions; she could maintain attention for an eight-hour workday at two-hour increments with normal breaks; she should have only

      occasional contact with the public; and any changes in the work setting needed to be gradually introduced and infrequent.

6. She was unable to perform any past relevant work.

7. She was born on [redacted], and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability date.

8. She had at least a limited education and was able to communicate in English.

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10. Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11. Ms. Reid had not been under a disability, as defined in the Social Security Act, from June 16, 2009, through the date of this decision.

Tr. 11-24.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Reid urges this court to reverse the Commissioner's decision to deny her benefits on the following grounds: (1) the ALJ improperly disregarded the opinions of Ms. Reid's treating physician, and (2) the ALJ failed to consider the combined effect of Ms. Reid's various severe impairments. Doc. 9 at 7-15. The court agrees with Ms. Reid's first objection. The ALJ inappropriately dismissed her only treating physician's opinion that her Hepatitis C and associated fatigue were severe impairments. The court will therefore remand the case for reconsideration of Ms. Reid's disability claims in accordance with this opinion.

**I.      The ALJ Wrongly Discounted Dr. Morrow's Opinion that Ms. Reid's Hepatitis and Fatigue Were Severe Impairments.**

As noted above, at Step Two of the sequential disability analysis, the Commissioner must determine the severity *vel non* of the claimant's various impairments. An impairment is severe if "it significantly limits [a] claimant's physical or mental ability to do basic work activities." *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "Although the claimant bears the burden of showing severity, the burden is mild, such that she need only show that her impairment is 'not so slight and its effect is not so minimal' as to

be trivial." *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 753 (11th Cir. 2011) (unpublished) (quoting *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986)). In other words, an impairment is not severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). Importantly, the severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, a mere diagnosis is insufficient to establish severity. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).

Dr. Stanley K. Morrow, D.O., is an osteopathic physician who treated Ms. Reid regularly from March 2007 through at least February 2011. He was her primary care physician during this period and, moreover, was the only physician on record who maintained such a consistent treating relationship with her. In Dr. Morrow's treatment notes, he diagnosed her with Hepatitis C on several occasions. *See, e.g.*, Tr. 408, 414. In 2007 and 2008, in accordance with his recommendation, she underwent drug therapy for this condition, which included administrations of Interferon, Pegaysis, and Ribavirin. *Id.* In a Functional Capacity Assessment dated November 23, 2010, he

continued to diagnose Ms. Reid with Hepatitis. Tr. 520. In a deposition dated that same day, he identified her Hepatitis and fatigue as the "most serious" of her ailments. Tr. 534. Indeed, he opined that the Hepatitis had been a "devastating disease" for her. Tr. 534-35. He further agreed with her attorney's description of the treatment for the disease as "very debilitating." Tr. 535.

In his opinion, the ALJ concluded that Ms. Reid's Hepatitis C and fatigue were "non-severe impairments." Tr. 13. He acknowledged that she had undergone treatment for these impairments, but he noted that there was no evidence showing explicit treatment for them from a specialist after May 2008. Tr. 12. Instead, she had sought treatment from Dr. Morrow, whom the ALJ accurately characterized as a family practitioner and not a specialist in any of the referenced ailments. Tr. 13. The ALJ conceded that Dr. Morrow diagnosed her consistently with Hepatitis C and chronic fatigue syndrome, but he discredited the doctor's judgment that these maladies were "devastating" or otherwise debilitating. *Id.* He cited several reasons in support. These included:

- Dr. Morrow was not a specialist in this area;
- he failed to point to any corroborating clinical or diagnostic findings;
- he did not refer her for specialized care after her treatment ended in May 2008;

- his records do not reveal specific "examination findings" supporting functional limitations;

- he did not prescribe medication for either Hepatitis or fatigue.

Tr.12-13. For these reasons, the ALJ determined that Ms. Reid's Hepatitis C and fatigue "[had] not resulted in any more than minimal limitations of [her] ability to do basic work activities." Tr. 13.

The court finds that the ALJ's scrutiny was too exacting at this stage of the sequential analysis. As indicated above, Ms. Reid's responsibility to show the severity of her (acknowledged) impairments is relatively mild at Step Two. She merely has to show that they are "not so slight" and their effect "not so minimal as to be trivial." *Gray*, 426 F. App'x at 753 (citation omitted). She satisfied this responsibility. Dr. Morrow – although not a specialist – was qualified to evaluate the severity of her Hepatitis C and fatigue. Moreover, as her only treating physician, his opinion is owed some deference. *See Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). He made it abundantly clear that (1) Ms. Reid's Hepatitis C and associated fatigue were her most serious illnesses and that (2) they significantly affected her ability to work. In his deposition, Dr. Morrow elaborated on the subject in the following manner:

> A. I've actually had quite a few patients with Hepatitis C and I refer them on to the hepatologist for the treatment regimen, which is typically

>     Interferon and a medicine called Pegasys. The medicines in combination work typically quite well for Hep C, but, I mean, I've had a few patients get suicidal from the medicine and it can cause severe depression. I've had patients have to stop the treatment for one to three months.
>
>     I've a few people that the treatment was so severe they just couldn't – you know, couldn't even take the treatment and had to deal with progressive hepatitis.
>
>     But the biggest, single problem you see is the severe fatigue that just typically doesn't seem to go away at least for –
>
> Q.   Even after the treatment is over?
>
> A.   – even after the treatment for quite a few of the patients.
>
> Q.   Has that happened in this case?
>
> A.   That's what appears to happen in this case because she – I've seen her for quite a while and she has severe fatigue.

Tr. 536-37. Under the standards prevailing in this Circuit, this opinion – along with Ms. Reid's subjective testimony – were sufficient to corroborate the severity of her Hepatitis C and fatigue at Step Two. The ALJ's dismissal of this evidence at this stage was thus reversible error.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed

and remanded by separate order.

**DONE** and **ORDERED** this the 24th day of July, 2014.

*/s/ Virginia Emerson Hopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge